AFFLICK, (THOMPSON v.)

[See Thompson v. Afflick. Cases Nos. 13,939 and 13,940.]

---

AGAWAM WOOLEN CO., (JORDAN v.)

[See Jordan v. Agawam Woolen Co., Case No. 7,516.]

---

## Case No. 98.

### The A. G. BROOKS.
### The ALICE.

[1 Low. 299.][1]

District Court, D. Massachusetts. Feb., 1869.

COLLISION—BETWEEN SAILING VESSELS—LOOKOUT.

1. One vessel has no right, without necessity, to tack so near another vessel that the pilot of the latter cannot, in the exercise of ordinary skill, avoid her.

2. When a vessel is tacking, and is out of command, other vessels must avoid her.

3. A vessel sailing in a harbor in the daytime must have a lookout forward.
[Cited in The Columbia, Case No. 3,035.]

4. As a general rule a vessel going free should pass under the stern rather than across the bows of one close-hauled.

[In admiralty. Cross libels for collision. Decree for libelants, and cross libel dismissed.]

Cross libels for damage done on the first

[1][Reported by Hon. John Lowell, LL.D., District Judge, and here reprinted by permission.]

day of August, 1868, in the harbor of Boston, at about four o'clock in the afternoon. The weather was fine, with a five or six knot breeze. The brig Alice was sailing down the harbor on her voyage to Surinam, and the schooner A. G. Brooks was coming up on a coasting voyage from a port in Maine to Boston. The collision occurred in the Narrows, between Galloupe's island and Lovell's island. On the part of the brig, the allegations in the record were that she was close-hauled on the starboard tack, and her pilot saw the schooner coming towards him with a free wind, on the port tack; that the brig kept her course until it became apparent that the schooner would not clear her, and then her helm was put to port, but too late to prevent the collision. On the other side, it was pleaded that the schooner was beating up to the town, and when near Galloupe's island, came about from the starboard to the port tack in the regular course of navigation, and that before she could gather full headway again was struck by the brig; that she had the right of way both because she was close-hauled and because she was in stays, and that she had no duty to perform and did nothing.

J. C. Dodge, for the schooner.
H. C. Hutchins and A. S. Wheeler, for the brig.

LOWELL, District Judge. I have endeavored to find out the truth from the very conflicting evidence given in, and will now state my conclusions. The preponderance of the evidence seems to me to show that the schooner was beating, and was close-hauled on the starboard tack not long before the collision, and when in that position was seen about three points on the lee bow of the brig, and from one-third to one-quarter of a mile distant. At this time the brig had come round Nix's Mate, and braced up her yards on the same tack. When the vessels were thus situated the pilot of the brig and her master appear to have thought that the schooner was bound out on nearly the same course with themselves, though they must probably have seen that she was lying nearer the wind than they were. Whether this circumstance should have warned them of the probability of her tacking I cannot say; but they observed that she did tack, and they say they observed it immediately on its taking place, and that it was made off the west end of Lovell's island, on the extreme leeward side of the channel; and that the distance of the vessels and their relative position was such that it was more prudent for the brig to keep close to the weather side of the channel, although this would bring her across the bows of the schooner, rather than to attempt to pass under her stern, which might result in cutting her in two; that they accordingly brought the brig close to the wind, and

kept her to the weather side of the channel, and, finding that notwithstanding this precaution there was still danger, they put their helm hard aport, and brought her in stays; and yet the collision occurred, though it was not very severe.

If it is true that the schooner tacked in a narrow channel when so near the brig that it was not possible to avoid her, or when it was so doubtful which course would best avoid her, that a skillful pilot acting with coolness was deceived, and in good faith and with reasonable skill chose one which resulted ill, it would be impossible to hold the schooner blameless, unless her going about was absolutely necessary to avoid the shore or some other danger. It would not then be a question who was free and who close-hauled, but why such a tack was made at that time and place. And on the other hand if it should be apparent that the schooner went in stays at a proper time and place, giving room enough and ample opportunity to avoid her, and had not got fully around on her new tack when she was struck, the question would still be not whether or no the brig was close-hauled, but why a vessel under command failed to clear a vessel which was, comparatively speaking, unmanageable.

Upon the whole evidence I am not able to say that the schooner was wrong in tacking. The libel against her, which was made soon after the occurrence, does not allege it; but says she was sailing up the Narrows with a free wind. This fact, I confess, has a good deal of weight with me as showing the opinion formed at that time; and it would seem that at a third or a quarter of a mile distant the brig might have gone astern of the schooner if it was her duty to clear her. Some experts have testified that this would be impossible; but when they afterwards give the distance in lengths of the brig it seems contradictory of their first opinion; for they give three or four lengths as being necessary for her to fall off three points, and this is less than a third of a mile. And when we add the distance that the schooner would go, which is said in testimony to have been in fact the whole width of the channel, there would seem to be no doubt that she must have cleared her, if she had starboarded as soon as she might have done. The pilot of the brig allowed what he considered to be ample room for the schooner to go about in, and she took more; and so they came together by the head. If he had undertaken to run under her stern no such nice calculation would have been necessary. I cannot but believe that either the position of the schooner, or her speed, or the course she intended to take, were misunderstood on board the brig. Nor can I doubt that the duty of making way was on that vessel. She had braced up her yards on rounding Nix's Mate; but upon the preponderance of the evidence she was not as near the wind as the schooner was,

nor as near as she could go; but whether so or not, the schooner was tacking so near her that it became her duty to avoid the probable danger, because it would arise and be imminent before the new course had been fully defined, and before the schooner could go to port or starboard as the case might require. In other words, it seems to me that the case presents the second of the predicaments which I above supposed; that is, of a vessel fully manageable and one not wholly under command. There is some reason to suppose that a lookout on the brig's deck, forward, might have called attention to the schooner earlier. Certain it is that the men were all forward, and were busy with one of the anchors, and in fact gave no report about the schooner, and although the master and pilot say they observed the tack as soon as it was made, yet that is a point on which they might easily be mistaken. It reconciles a good many of the contradictions to suppose that when they first saw that the schooner had tacked, it was too late to do anything except to port helm; but that if they had seen her a little sooner, and starboarded, they would have gone clear. This not only reconciles some contradictions, but reconciles the result with the acknowledged skill of the professional pilot who had charge of the brig's helm. And this general view of the obligations of the parties tallies entirely with the acts of both. The evidence is clear that the brig kept her course, so far as she did keep it, not because the pilot thought he had the right of way, but because he thought there was ample room for the schooner to go about, and that he in fact did not keep his course entirely but gave a little more room to the schooner by bringing his ship still nearer the wind than she already was. In my experience, I have found nearly as many collisions (though perhaps not the most serious) to result from slight miscalculations on the part of skillful men, as from the blunders of novices. To justify a close run in cases of this kind it is necessary to reckon on the performance of both vessels, and this is where, I suppose, the mistake is sometimes made. At all events it seems to me that the duty was on the brig, and that she has failed to perform it. The very fact of want of a lookout is evidence against her until it is shown that no harm came of the neglect.

Interlocutory decree for the libellants in the first cause; libel in behalf of the brig dismissed.